**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**


**CHANDRASHEKHAR LAKSHMAN**                                        **PLAINTIFF**

**VS.**                                        **CIVIL ACTION  NO. 3:05cv151HTW-JCS**

**RONALD MASON, JR., Individually,**
**and JACKSON STATE UNIVERSITY**                                        **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Before this court is the defendants' motion asking this court to dismiss this lawsuit under the authority of Federal Rule of Civil Procedure 12(b)(6),[1] or, in the alternative, for summary judgment under the auspices of Rules 56(b)[2] and (c)[3] **[docket no. 8]**.  Plaintiff herein, Chandrashekhar Lakshman, filed this civil lawsuit in this federal forum invoking

---

[1]Federal Rule of Civil Procedure 12(b)(6) provides, in pertinent part, that "[e]very defense . . . shall be asserted in the responsive pleadings . . . except that the following defenses may at the option of the pleader be made by motion . . . [for] failure to state a claim upon which relief can be granted."

[2]Federal Rule of Civil Procedure 56(b) provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[3]Federal Rule of Civil Procedure 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

this court's federal question[4] and supplemental jurisdiction.[5]  In his complaint, *inter alia*,

plaintiff alleges that defendant Ronald Mason, President of Jackson State University,

(hereinafter "President Mason"), violated plaintiff's property due process rights and that

defendant Jackson State University (hereinafter "JSU") breached its employment contract

with plaintiff.  In their motion now before the court, the defendants argue that plaintiff's

claims should be dismissed because:  (1) plaintiff's claim against JSU, a state-chartered

institution of higher learning,[6] is barred by the Eleventh Amendment to the United States

Constitution[7] and that the doctrine of qualified immunity shields President Mason.  The

defendants additionally argue that plaintiff's claims are not cognizable against either

defendant under the applicable state contract law.

    Plaintiff opposes defendants' motion.  Nevertheless, because of the reasons

enunciated herein, this court finds the defendants' motion well-taken and, therefore,

grants the motion.

---

[4]Title 28 U.S.C. § 1331 states, "The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[5]Title 28 U.S.C. § 1367 states, in pertinent part, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution."

[6]MS Const. Art. 8, § 213-A, provides in pertinent part that Jackson State University, listed by name among Mississippi's state institutions of higher learning, is organized and established by the State of Mississippi, and operates "under the management and control of a board of trustees to be known as the Board of Trustees of State Institutions of Higher Learning."  This management authority is provided pursuant to MS Code Ann. § 37-101-1.

[7]U.S. Const., amend. XI, provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**BACKGROUND**

On July 30, 2001, Dr. Glenda B. Glover (hereinafter " Dr. Glover"), then Dean of the JSU School of Business, informed plaintiff that she, on behalf of the School of Business, had recommended him to the Vice President of Academic Affairs, Dr. Joseph M. Stevenson, and to the President of the University, defendant President Mason, for the open position of Assistant Professor of Management for the 2001-2002 academic year. In the letter,[8] Dr. Glover stated that the initial salary for this position would be $57,500.00. The letter stated  that "should [plaintiff] complete the [doctoral] degree by December, [plaintiff would] be reassigned a contract . . . at a salary of 65,500.00."

President Mason sent plaintiff an official letter on August 28, 2001.  In that August 28, letter, President Mason affirmed Dr. Glover's statement, but added the following caveat:  "If you do not receive the Doctor of Philosophy degree by May 13, 2001, you will

---

[8] The letter in its entirety is as follows:

"Dear Mr. Lakshman:

We are pleased to recommend you for the position of Assistant Professor of Management in the School of Business effective the Fall Semester 2001 with a 9-month salary of $57,500.  This recommendation is being made to the Vice President of Academic Affairs and the President of the University, who will submit it to the IHL Board of Trustees for the State of Mississippi.

Should you complete the degree by December 2001, you will be reassigned a contract as Assistant Professor of Management at a 9-month salary of $65,500.

Please notify us in writing of your acceptance and complete the enclosed application for employment and return it to Dr. J. R. Smith by August 3, 2001.  I look forward to the opportunity to work with you at Jackson State University.

Sincerely,
Glenda B. Glover
Dean"

3

be placed in a non-tenure track position and given a [sic] one year terminal contract."[9]
Plaintiff accepted the position.

On September 26, 2001, defendant President Mason communicated again with
plaintiff by letter.  In this correspondence, President Mason stated that the Board of
Trustees of the Mississippi Institutions of Higher Learning had approved the School of
Business's recommendation.  An employment contract, which stated that plaintiff would
be paid a salary of $57,500.00 accompanied the letter.  Neither defendant President
Mason's letter nor the enclosed contract addressed the salary increase mentioned in
Glover's July 30, 2001, letter.

Plaintiff completed his doctoral degree program on February 26, 2003, having
missed President Mason's deadline of December 31, 2001, by nearly fourteen months.
The plaintiff does not fault JSU in any way for his inability to meet the May 13, 2001,
deadline.  Sometime after having acquired his Doctorate, plaintiff sent a letter to Dr.
Glover concerning his salary and the recommended salary increase.  In the letter, plaintiff
stated that he had been informed by Dr. J.R. Smith (hereinafter "Dr. Smith"), Chair of the
Department of Management and Marketing, that the School of Business was having

---

[9] The letter in its entirety has not been submitted to the court, but the text cited in
defendants' rebuttal memorandum [docket # 18], p.2, is as follows:

"This is to inform you that we shall recommend to the Board of Trustees that you be employed on
the faculty of Jackson State University as Assistant Professor of Management, Department of
Management and Marketing, at a salary of $57,500 per nine months, effective August 10, 2001.
If you complete the Doctorate of Philosophy degree by December 31, 2001, the rank of Assistant
Professor of Management will be recommended at a nine month salary of $65,500.  If you do not
receive the Doctor of Philosophy degree by May 13, 2001, you will be placed in a non-tenure tract
position and given a one year terminal contract."

difficulty securing the funds necessary to increase plaintiff's salary.  The letter added that

Dr. Smith would meet with defendant President Mason to discuss plaintiff's salary.

On January 7, 2004, Dr. Glover wrote back to plaintiff, stating that the Vice

President of Academic Affairs previously had agreed to increase plaintiff's salary to

$65,500.00 once he completed his doctoral degree program;[10]  however, according to Dr.

Glover, JSU was having financial difficulties and could not then increase plaintiff's salary.

Dr. Glover's letter urged plaintiff to renew his employment contract with JSU at the initial

salary of  $57,500.00, while Dr. Glover continued to negotiate his salary with the Vice

President of Academic Affairs Office.

Thereafter, plaintiff signed the employment contract.  He attached a clause, stating

in pertinent part that "the amount on the contract [$57,500.00] is incorrect and needs to

be revised."

---

[10] The full text of this memo states:

"This memo pertains to the salary adjustments that was promised to you when you accepted the offer to join the faculty of the School of Business at Jackson State University.  At that time, we recommended to the Vice President of Academic Affairs that you receive an initial salary of $57,500 and an adjusted salary of $65,500 upon completion of your doctorate.  The Vice President agreed to this arrangement.

Due to financial difficulties of the University, we have not yet made the adjustment.  However, I am still negotiating with Dr. Stevenson in Academic Affairs regarding our honoring this commitment.  Though I understand your position, please accept my commitment to do all in my power to ensure the $65,500 salary to which you agreed.

Meanwhile, I strongly urge you to sign your employment contract so that you may remain on the payroll at Jackson State.  Failure to execute your current contract may result in your not receiving a pay check in future pay periods.  I am available to discuss this further if you desire."

The amount of the salary was not revised.  Eventually, the parties recognized that further discussions would be futile.  Consequently, on March 7, 2005, plaintiff commenced the above-styled and numbered lawsuit.

## SUMMARY JUDGMENT STANDARD

This court is warranted in granting summary judgment only in the absence of any genuine issue as to any material fact and where the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  The party seeking summary judgment has the initial burden.  Under this burden, the moving party is tasked with demonstrating through the evidentiary materials that no actual dispute exists as to any material fact in the case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The court must view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.  *Id.*  "The plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

In making a summary judgment determination, the court should not conduct a trial by affidavit.  Rightly so, since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must

6

deny the motion and proceed to trial.  *Impossible Elec. Tech. v. Wachenhut Protection Sys.*, 669 F.2d 1026, 1037 (5th Cir. 1982).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon the pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing the existence of a genuine issue for trial.  *Celotex,* 477 U.S. at 324. Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson,* 477 U.S. at 248.  The relevant inquiry is whether there is sufficient disagreement on the facts to submit them to the jury, or whether it is so one-sided that one party should prevail as a matter of law.  *Id.* at 251.

## ANALYSIS

Defendant Jackson State University claims Eleventh Amendment Immunity and, concomitantly, contends that it should be dismissed from this action.  The plaintiff agrees, stating in his response to the motion for summary judgment that he "concedes" the defendant's assertion that Jackson State University is entitled to a dismissal from this cause of action.

The parties' understanding of the Eleventh Amendment's reach is correct.  The Eleventh Amendment to the United States Constitution reads as follows:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, . . ." Although the literal text of the amendment does not bar suit against a State by its own

citizens, the Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens . . ." *Kinnison v. Miss. Dept. of Wildlife, Fisheries, & Parks*, 990 F. Supp. 481, 483 (S.D. MS 1998) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-3, 94 S.Ct. 1347, 1355, 39 L.Ed. 2d 662 (1974)).  Absent waiver or clear expression by Congress of an intent to abrogate immunity, a state entity acting under state control is not subject to suit in federal court.  *Bryant v. Military Dept. of the State of Mississippi*, 381 F. Supp.2d 586, 591 (S.D. Miss. 2005) (citing *Martinez v. Texas Dept. of Criminal Justice*, 300 F.3d 567, 573 (5th Cir. 2002).  Neither exception applies to the claims involved here.

Thus, the parties herein first appreciate that JSU is a Mississippi statutorily-created[11] wellspring for educational enrichment;  next, that this fount, as are Mississippi's other focused universities for intellectual advancement, is precious to the State's mission to be there for those mature enough to appreciate the wealth that education provides and to tickle, nudge, push, shove the minds of the immature who simply need more time to understand the blessing of education;  and finally that the Eleventh Amendment protects, vigorously, this and other such state institutions of incalculable impact.  Thus, simply stated, this court agrees with the parties that JSU must be dismissed from this lawsuit pursuant to the dictates of the Eleventh Amendment.  *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (holding that federal courts have no jurisdiction over suits against non-consenting states).

---

[11]MS Code Ann. § 37-125-1, et seq., provides for the establishment and operation of Jackson State University, under the management and control of the IHL Board of Trustees.

8

Plaintiff complains that defendant President Mason denied him both procedural and substantive due process.  The crux of plaintiff's complaint is that defendant President Mason denied him an allegedly agreed salary increase, thereby violating Title 42 U.S.C. §1983.[12]  Again, the specifics.  Plaintiff asserts that he and defendant President Mason contracted for plaintiff to accept a professorship at Jackson State University for an initial salary of $57,500.00, with a forthcoming salary increase of $65,500.00 once plaintiff completed his doctoral degree.  Plaintiff argues that this contractually agreed salary increase constituted "property," which defendant President Mason, according to plaintiff, subsequently denied to him without due process of law.

Property interests are not created by the United States Constitution;  they derive from, "and their dimensions are defined by, existing rules or understandings that stem from an independent source, such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In the instant case, the plaintiff alleges that his property interest was created by Mississippi contract law, correctly relying upon state law because the extent to which a property right exists is determined by an examination of state law.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (holding that a state statute created a plaintiff's property interest in employment).

---

[12]Title 42 U.S.C. § 1983 states, in pertinent part, that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

Under Mississippi law, the elements of a valid contract are:  (1) two or more contracting parties;  (2) consideration;  (3) an agreement that is sufficiently definite;  (4) parties with the legal capacity to make a contract;  (5) mutual assent;  and (6) no legal prohibition precluding contract formation.  The evidence plaintiff offers to support his position that defendant President Mason entered into a contract with him for a salary increase is defendant President Mason's August 28, 2001, correspondence with plaintiff. In the letter which is signed by defendant President Mason, defendant Mason states:

> [W]e shall recommend to the Board of Trustee that you be employed on the faculty of Jackson State University as Assistant Professor . . . at a salary of $57,500 per nine months . . . . If you complete the Doctorate of Philosophy degree by December 31, 2001, the rank of Assistant Professor of Management will be recommended at a nine month salary of $65,500.  If you do not receive the Doctor of Philosophy degree by May 13, 2001, you will be placed in a non-tenure track position and given a [sic] one year terminal contract.

This is the only evidence of a "contract" between plaintiff and defendant President Mason in the record.

The court is not convinced that this letter confers any property right on plaintiff, importantly, because plaintiff did not complete his responsibility under the contract. Based on a plain reading of the letter, the court determines that the letter reduces to paper defendant President Mason's promise to make a recommendation to the Board of Trustees of the Institutions of Higher Learning that plaintiff receive a salary increase in consideration for plaintiff's promise to complete his doctoral degree program by December 31, 2001.  Plaintiff failed to deliver on his promise by not completing his doctoral degree program until February 26, 2003, almost one year and two months after the date stated in defendant President Mason's letter.  Therefore, this court finds that

plaintiff did not have a property interest in the salary increase and, therefore, defendant President Mason did not violate plaintiff's due process property interest relative to said salary increase.

Moreover, the court additionally finds that neither defendant President Mason, nor any other administrator at Jackson State University, had the authority to contract with the plaintiff for the salary increase.  Mississippi Code Annotated § 37-101-15(f) states that "the board shall have the power and authority to elect the heads of the various institutions of higher education *and* to contract with all deans, professors, and other members of the teaching staff, and all administrative employees of said institutions for a term of not exceeding four (4) years."  The statute is clear that the Board of Trustees of Institutions of Higher Learning solely has the power to contract with professors.  The contract approved by the Board and signed by the plaintiff and defendant President Mason makes no mention of a salary increase.  Therefore, the court determines that plaintiff's only property interest was for his initial salary of $57,500.00, and not the salary increase to $65,5000.00.

Plaintiff additionally argues, in spite of the aforementioned evidence before the court, that Dr. Glover's January 7, 2004, letter -- in which she acknowledges that the Vice President of Academic Affairs had previously agreed to increase plaintiff's salary to $65,500.00 once he completed his doctoral degree program;  and urges plaintiff to renew his employment contract with JSU at the initial salary, $57,500.00, while she continued to negotiate his salary with the Vice President of Academic Affairs Office – is evidence that defendant President Mason entered into a contract with the plaintiff for a salary increase.

11

Plaintiff's position is untenable.  As stated earlier, neither President Mason, Dr. Glover, nor the Vice President of Academic Affairs at Jackson State University, has or had the authority to contract with a professor.  Only the Board of Trustees of the Institutions of Higher Learning has that authority.  Furthermore, no evidence in the record shows that the Board of Trustees ever delegated this authority to any of these JSU principals or routinely acquiesced or customarily deferred to JSU's employment wishes.

In short, no evidence in the record shows that plaintiff had a property interest in the salary increase.  Accordingly, this court dismisses plaintiff's claim against defendant President Mason for deprivation of property without due process of the law.

## CONCLUSION

Winning the laudable endeavor to capture a prized academic honor of superlative worth, plaintiff has much about which to be proud.  Plaintiff, then, undoubtedly is correct that this formal recognition of academic talent should be accompanied by formal appreciation, appreciation evidencing that such an attainment merits heightened respect and compensation.  Plaintiff's efforts here will not yield that financial appreciation, not because this court concludes he is not entitled, but because his argument falls short of the legal bar.

This is so, because:  (1) this court is convinced, as are the parties, that the Eleventh Amendment bars this court from asserting jurisdiction over Jackson State University in this civil lawsuit.  Therefore, the court dismisses plaintiff's state law claim against defendant Jackson State University without prejudice;  and (2)  this court also is persuaded that no evidence in the record supports plaintiff's theory that he has a property

interest in the salary increase.  Accordingly, this court dismisses with prejudice plaintiff's claim against defendant President Mason for deprivation of property without due process of the law.  Having dismissed all defendants, this court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED**, this the 30th day of September, 2006.

**s/ HENRY T. WINGATE**

_____

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04-cv-946 WS
Memorandum Opinion and Order